**Leonard McCOY, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 93–73811.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 23, 1994.

Robert Van Cleef, Becker & Van Cleef, Southfield, MI, for plaintiff.

Randolph D. Phifer, Patterson, Phifer, Detroit, MI, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Defendant filed the instant motion for summary judgment May 9, 1984. Plaintiff filed a response May 20, 1994. Defendant filed a reply June 7, 1994.

### I. Facts

Plaintiff Leonard McCoy was an hourly worker with General Motors ("GM") Truck and Bus Division in Pontiac, Michigan beginning in August 1977. Plaintiff's position with

GM was as an electrical trouble shooter/assembler.

Pursuant to a collective bargaining agreement with the International Union, United Automobile, Aerospace and Agriculture Implement Workers of America (the "Union"), of which plaintiff is a member, GM agreed to provide certain benefits, including disability benefits. Under the GM's disability benefits contract with the Union, entitled "The General Motors Life and Disability Benefits Program for Hourly Employes" [sic], the insurance carrier,[1] that is, defendant MetLife

> may require an applicant, as a condition of eligibility, to submit to examinations by a physician designated by it for the purpose of determining his eligibility.

Art. II, § 7(e), Ex. B to Defendant's Motion at 32. Under a Supplemental Agreement to the disability plan, GM and the Union agreed to participate in a so-called "GM–UAW Impartial Medical Opinion Program" ("IMO Program"). The IMO Program requires that

> [e]xaminations requested by the insurance company in accordance with Article II, Section 7(e) of the Program shall be performed, whenever possible, by physicians who have been designated as impartial medical examiners in accordance with agreements made between the Corporation and the Union.... The opinion of such an examiner with respect to the existence of total disability as defined in Article II, Section 7(a) of the Program shall be final and binding upon the Corporation, the Union, the insurance company, and the employe [sic].

Ex. A to Defendant's Motion at 12.

In 1985, plaintiff was diagnosed as suffering from carpal tunnel syndrome. To correct that condition, plaintiff underwent surgery to his right hand. In 1988, plaintiff underwent a second surgery, this time to his left hand. Both surgeries were performed by plaintiff's physician, Dr. Winkelman.

Plaintiff's condition and consequent 1988 surgery left him unable to perform his regular duties at GM. In June 1988, plaintiff applied for and began receiving Sickness and Accident Benefits under the GM disability benefits plan. Following exhaustion of Sickness and Accident benefits in June 1989, plaintiff applied for and received Extended Disability Benefits beginning July 1, 1989.[2]

Pursuant to the Supplemental Agreement's provision regarding the IMO Program, defendant MetLife scheduled plaintiff to meet with Dr. James Beale on September 6, 1990 to render an opinion as to whether plaintiff was totally disabled. Dr. Beale conducted a physical examination of plaintiff and conducted several tests, including an EMG test. Dr. Beale issued a report dated September 19, 1990 wherein Dr. Beale found as follows:

PHYSICAL EXAMINATION:

> \*   \*   \*   \*   \*   \*
>
> On examination he has tender scars over the volar aspects of both wrists, but they are healed. He has negative Tinel's test, positive Phalen's test on the right, positive forearm compression test on the right. All tests were negative on the left. Sensation was questionable over the median nerve.

CONCLUSION:

> Based on this evaluation we ordered an EMG on September 12, 1990. The EMG showed no evidence of any neuropathy or carpal tunnel syndrome.
>
> Based on this evaluation we feel that this patient is able to go back to work at this time with no restrictions.

Ex. J to Defendant's Motion. Based on this report, defendant MetLife notified plaintiff

---

1. GM's health plan is self-funded, that is, funded entirely by GM. GM engages defendant Metropolitan Life Insurance Company ("MetLife") to act as the claims fiduciary only.

2. Section 7 of the GM Plan provides that when Sickness and Accident benefits expire, an employee who is totally disabled shall thereafter receive monthly Extended Disability Benefits. Ex. B to Defendant's Motion at 26. The Plan defines total disability as follows:

> For an employe [sic] to be deemed totally disabled, he must not be engaged in regular employment or occupation for remuneration or profit and be wholly prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where he has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause.
> *Id.*

**42**

that his benefits would be terminated unless plaintiff's doctor submitted evidence to Dr. Beale which resulted in a change in Dr. Beale's opinion. Plaintiff's doctor, Dr. Winkelman, thereafter submitted his finding that plaintiff could return to work only under certain restrictions. Dr. Beale reviewed Dr. Winkelman's findings but refused to change his opinion as to plaintiff's condition. Plaintiff was then notified that his extended disability benefits were terminated as of September 13, 1990.

The GM Plan provides for a six-step administrative appeal procedure. The first three of those steps are as follows:

**Step 1.** Following receipt of the formal notification letter from Metropolitan by which the employe [sic] ... is advised of the reasons for the denial of his claim, the employe ... may request the representative whom his local union has designated to discuss [Plan] matters to review the reasons for the denial with the local management representative.

**Step 2.** The local management representative will review the employe's case with the local union benefit representative.... the local management representative ... will advise what, if anything, the employe ... can do to support the claim for payment of benefits....

**Step 3.** If, after discussion with the local management representative, the local union benefit representative contests the position of Metropolitan as reflected by the local management representative he *may* refer the case on an appeal form provided for that purpose to the International Union for review with the Corporation. A copy of such appeal form shall be presented to the local management representative.

Ex. B. to Defendant's Motion at 94 (emphasis added). By letter dated February 8, 1993,[3] the local union benefit representative notified plaintiff that he, the union representative, had determined that there was no basis for appealing the IMO exam. Ex. 6 to Plaintiff's Response. Thus, plaintiff had gotten as far as the third step of the six-step appeal procedure when the procedure was terminated by

the union representative's discretionary decision to proceed no further.

On September 9, 1993, plaintiff filed a complaint alleging violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Defendant brings the instant motion for summary judgment on two grounds. First, defendant claims that plaintiff has failed to exhaust his administrative remedies because he only proceeded as far as the third step of the appeal procedure outlined in the GM Plan. Second, defendant claims that the IMO report is final and binding on all concerned parties.

## II. Analysis

■ As to defendant's first claim, the court finds that plaintiff did indeed exhaust his administrative remedies. At the third step, the decision to appeal further is solely within the discretion of the union representative. With the representative's decision to not continue with the appeal, plaintiff was at the end of his remedies under the plain language of the plan.

As to defendant's second argument, the court finds that defendant's motion should be granted. At least one court in this circuit has addressed the precise issue raised by plaintiff's complaint. In *Harris v. Metropolitan Life Ins. Co.*, 542 F.Supp. 1 (E.D.Mich. 1980), *aff'd* 672 F.2d 917 (table) (6th Cir. 1981), the plaintiff was a GM employee whose disability benefits were terminated on the basis of an IMO report that he was not totally disabled. The court found in *Harris* that defendant MetLife had

followed the procedure provided for in the agreement in resolving plaintiff's claim for benefits under the policy. The doctors chosen under the impartial medical program concluded plaintiff was fit to return to work. [footnote omitted] Their determination is the same as if an arbitrator ha[d] resolved a grievance under the collective bargaining agreement. It is not open to challenge because plaintiff disagrees.

*Id.* at 2.

■ In the instant case, defendant MetLife also followed the procedures provided in

**3.** The delay was due to the fact that plaintiff's benefits case was held pending resolution of his worker's compensation petition was recently withdrawn.

the agreement for resolving plaintiff's claim for benefits. And like the *Harris* case, in this case the Union of which plaintiff is a member,

> negotiated the sickness and accident benefits policy. The [Union] agreed with GM, that any dispute over the right to benefits would be resolved under the impartial medical opinion program. That agreement is binding on plaintiff.

*Id.* This court notes that the district court's opinion in the *Harris* case was appealed to the Sixth Circuit. The Sixth Circuit affirmed the district court's decision.

In the instant case, Dr. Beale's medical opinion appears on its face to be at least somewhat contradictory.[4] However, the parties agreed that the opinion of the impartial medical examiner would be "final and binding." Ex. A to Defendant's Motion at 12. Consequently, this court has no authority to review Dr. Beale's decision. For the foregoing reasons, defendant's motion for summary judgment shall be granted.

### ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment is **GRANTED.**

**SO ORDERED.**

---

**4.** Dr. Beale notes clinical deficiencies in plaintiff's right hand in the Physical Examination section of his report. Nevertheless, Dr. Beale, ap-

parently relying completely on the results of the EMG test, finds that plaintiff is capable of working without any restrictions whatsoever.